IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

2018 FEB 20 A 11: 21

| | | |
|---|---|---|
| **PRESIDENTIAL TOWERS** <br> **CONDOMINIUM, INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-16-3673 |
| **REPUBLIC SERVICES, INC., *et al.*,** | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this tort action, Plaintiff Presidential Towers Condominium, Inc. alleges that Defendants Republic Services, Inc. ("Republic") and BFI Waste Services, LLC ("BFI") were contracted to pick up the trash from Plaintiff's property, and negligently damaged and subsequently trespassed on Plaintiff's property by refusing to remove Defendants' dumpsters. ECF No. 12 at 2–3.[1] Plaintiff seeks a total of $133,187.25 in damages. *Id.* BFI filed a counterclaim against Plaintiff, alleging a breach of contract and seeking damages of $35,561.57. ECF No. 14. Presently pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 26. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion for Summary Judgment is granted-in-part and denied-in-part.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

I.  **BACKGROUND**[2]

On September 7, 2012, Plaintiff entered into a Customer Service Agreement (the "Agreement") with BFI Waste Services, LLC for BFI to remove Plaintiff's trash and recyclables. ECF No. 26-3 at 2. The Agreement specifically provided that the contracting party was "BFI Waste Services, LLC, DBA Allied Waste Services of Washington, Republic Services of Washington Metro, Calvert Trash." *Id.* The Agreement specified that it would "automatically renew for successive 36 month terms unless either party gives written notice of termination to the other at least 60 days before the end of the then current term." *Id.* The Agreement also provided that the Company could, after notice to Plaintiff, "increase the rates provided in this Agreement to adjust for any increase in" a number of different costs. *Id.* at 6.

Under the terms of the Agreement, BFI provided dumpsters for Plaintiff to store its trash and recycling. The parties do not dispute that it was Plaintiff's responsibility to empty the dumpsters and remove the trash. There is conflicting evidence, however, regarding whose responsibility it was to move the dumpsters from inside the building to the pick-up location. According to BFI's Business Unit Controller, BFI was responsible for picking up the trash and recycling from outside of Plaintiff's building; it was the responsibility of Plaintiff's employees or cleaning contractors to transport the dumpsters from the interior of Plaintiff's building to the outside area. ECF No. 26-4 at 2. At his deposition and in his affidavit, however, Plaintiff's corporate designee was unclear as to whose responsibility it was. *Compare* ECF No. 26-6 at 5 ("primarily the task [of moving the dumpsters] is done by the cleaning company"), *with* ECF No. 27-8 at 11–12 (explaining that the "responsibility . . . to get the cans from the trash room to the outside . . . varied between the trash company and the cleaning company"), *and* ECF No. 27-5 at

---

[2] The facts relied on herein are either undisputed or viewed in the light most favorable to the Plaintiff, and are drawn from the evidence submitted by both parties.

2

3 ("Both the defendant and the cleaning contractor were responsible for taking dumpsters from the trash collection rooms to outside and returning them.").

The parties carried out this relationship for several years until late 2014. On an invoice dated December 20, 2014, BFI included under a heading labeled "Important Information" the notice that "[y]our next invoice may reflect a rate adjustment, if you have any questions after receiving your next invoice please contact us." ECF No. 26-5 at 18. The total charges for the December 20, 2014 invoice were $6,812.03, and consisted of $6,190.31 for "Basic Service" and $619.03 for a "Total Fuel Recovery Fee." *Id.* On the next invoice, dated January 20, 2015, the total charges were $7,016.87, which consisted of $6,376.02 for "Basic Service" and $637.70 for "Total Fuel Recovery Fee." *Id.* at 26-5. This amounts to a roughly 3% increase. At this point, as reflected by the invoices, Plaintiff stopped paying its monthly balance. BFI continued to provide service and send Plaintiff monthly invoices, noting the past due balance, and assessing monthly late fees. *See id.* at 22 (invoice from February 20, 2015); *id.* at 24 (invoice from March 20, 2015); *id.* at 26 (invoice from April 20, 2015); *id.* at 28 (invoice from May 20, 2015); *id.* at 30 (invoice from June 20, 2015); *id.* at 32 (invoice from July 20, 2015). The invoices indicate that throughout this time, Plaintiff made payments towards its balance only once, on June 25, 2015, when it made three payments of $2,500 each. *Id.* at 32. The invoice from July 20, 2015, indicates that the final past due balance was $35,551.67. *Id.*

Once Plaintiff stopped paying its monthly balance, Plaintiff and BFI entered into negotiations regarding the balance and Plaintiff's contract with BFI. ECF No. 26-4 at 3. BFI discussed waiving part of the outstanding balance, entering into a new contract with Plaintiff, and matching any price that Plaintiff was being offered by BFI's competitors. *Id.* Ultimately, on July 2, 2015, Plaintiff informed BFI that it wished to terminate its relationship with BFI, and

3

requested that BFI remove its containers by July 13, 2015. ECF No. 26-12 at 2. Plaintiff informed BFI that it would begin assessing a storage fee of $75 per day per container after July 13, 2015, if the containers were not removed. *Id.* On July 8, 2015, BFI acknowledged receipt of the notice of termination, but demanded "final payment for services rendered of $35,551.67" for Plaintiff to be able to terminate the relationship. ECF No. 26-9 at 2. Furthermore, BFI informed Plaintiff that "[u]ntil payment is received we will not service or remove these containers and we will not pay a storage fee." *Id.* On August 4, 2015, BFI delivered several "Final Notices" to Plaintiff, threatening to turn the matter over to a collection agency. ECF No. 27-4 at 3–5. The dumpsters were not removed until November 11, 2015. ECF No. 26-10 at 5.

At some point prior to May 9, 2016, the walls of the corridor between Plaintiff's trash room and the pick-up location were "substantially gouged or damaged." ECF No. 26-11. Plaintiff's corporate representative testified that this damage occurred while Republic was servicing Plaintiff, and that Republic's representatives acknowledged that their containers had caused the damage to the walls. ECF No. 27-8 at 4.

On July 6, 2016, Plaintiff commenced an action against Republic in the District Court for Prince George's County. *Presidential Towers Condominium, Inc. v. Republic Services, Inc.*, Civil Case No. CAL1627862 (District Court for Prince George's Cty.). On November 9, 2016, Republic removed the action to this Court pursuant to its diversity jurisdiction (Defendants are Delaware corporations, with their principal places of business in Arizona, and Plaintiff is a Maryland corporation). ECF No. 1; ECF No. 13 at 1. On December 7, 2016, Plaintiff filed its Amended Complaint, naming BFI as an additional defendant, ECF No. 12. BFI answered the Complaint and filed a counterclaim against Plaintiff on December 20, 2016. ECF No. 14. Defendants filed a Motion for Summary Judgment regarding Plaintiff's claims and BFI's

4

counterclaim on July 28, 2017, which is now pending before the Court. ECF No. 26. Plaintiff has opposed Defendants' Motion, ECF No. 27, to which Defendants replied, ECF No. 30.

## II. STANDARD OF REVIEW

"Under [Federal Rule of Civil Procedure] 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). A dispute of material fact is genuine if the conflicting evidence creates "fair doubt," *Cox v. Cnty. Of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Nevertheless, a "mere scintilla of proof" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) (citing *Anderson*, 477 U.S. at 252). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts

5

on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

## III. DISCUSSION

Defendants raise several arguments in their Motion for Summary Judgment. First, Republic argues that Plaintiff does not have any valid claims against it, because it was not a party to the Agreement. ECF No. 26-1 at 7. Second, BFI argues that it is entitled to summary judgment on Plaintiff's damages claims because BFI was not responsible for moving its dumpsters through the corridors of Plaintiff's building, where Plaintiff alleges it suffered damages. *Id.* at 7. Third, BFI argues that it is entitled to summary judgment on Plaintiff's trespass claims because Plaintiff has not "produced nor identified any actual damage done to the property where the dumpsters were kept." *Id.* at 10. Finally, BFI argues that it is entitled to summary judgment on its counterclaim, as Plaintiff stopped paying BFI in January 2015 but continued to accept service from BFI. *Id.* at 11.

The Court addresses the above arguments in turn, after first considering which law should be applied to this dispute.

### A. Choice of Law

Although not addressed by the parties, first, the Court considers which law to apply to this tort and contract dispute. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). Here, the Court applies Maryland's choice of law rules.

6

In Maryland contract cases, "absent a choice-of-law provision in the contract, our courts have applied the rule of *lex loci contractus* to matters regarding the validity and interpretation of contract provisions" as well as to the "enforceability and effect of a contract." *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 790 A.2d 720, 728 (Md. App. 2002). "Under this principle, the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466 (Md. 1988). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc.*, 790 A.2d at 728. Where a form contract is presented to a party and requires a countersignature to become effective, "the jurisdiction where the countersignature is made is the *lex loci contractus* under Maryland law." *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 463 (D. Md. 1998).

For tort claims, Maryland follows the principle of *lex loci delicti*, applying the law of the state where the injury occurred. *Fluxo–Cane Overseas Ltd. v. E.D. & F. Man Sugar Inc.*, 599 F. Supp. 2d 639, 642 (D. Md. 2009).

Here, the Court will apply Maryland state law to the tort damages and trespass claims, as well as to the contract counterclaim.[3] Regarding the tort and trespass claims, it is clear that any injury suffered by Plaintiff occurred in Maryland, where the Presidential Towers Condominium is located. *See* ECF No. 12 ¶ 3. Regarding the contract counterclaim,[4] based on the documents before the Court, it appears that the Agreement was entered into in Maryland. The Agreement is a form contract, which BFI apparently filled in and provided to Plaintiff for Plaintiff's signature. ECF No. 26-3 at 2. Plaintiff's administrative assistant signed the Agreement, presumably at

---

[3] The Court notes that its conclusion here is consistent with the parties' briefs. Although the parties did not address the choice of law issue, both sets of briefs relied on Maryland case law. *See, e.g.*, ECF No. 26-1 at 10; ECF No. 27-1 at 5.

[4] The Court notes that the Agreement does not contain a choice-of-law provision.

7

Plaintiff's office in Maryland. As such, "the jurisdiction where the countersignature is made"—here, Maryland—"is the *lex loci contractus* under Maryland law."

### B. Inclusion of Republic Services, Inc. as a Defendant

Republic argues that it is entitled to summary judgment because "Plaintiff's contract was with BFI, not Republic" and that "it was BFI, not Republic, that provided waste management services to Plaintiff." ECF No. 26-1 at 7. To the extent that BFI used a logo, website, stationary, or other material, incorporating "Republic Services," Republic argues that this was "merely a trade name." *Id.*

Plaintiff counters that Republic should be considered a party to the contract under a theory of detrimental reliance;[5] that is, that Republic "did business through BFI," "held itself out as providing waste removal services," and that Plaintiff detrimentally relied on Republic's conduct. ECF No. 27-1 at 4. Plaintiff points out that the invoices it received had Republic's name and logo, that checks were made payable to "Republic Services," and that the employees who interacted with Plaintiff used email addresses that included the name "Republic Services." *Id.* Plaintiff argues that it relied on Defendants' representations that it was dealing with Republic, and that Republic cannot now claim that it had no business relationship with Plaintiff. *Id.* at 4–5. In furtherance of its argument, Plaintiff submits the Agreement, which has the "Republic Services" name and logo at the top, ECF No. 27-2 at 2; a print-out of Republic Services, Inc.'s website, ECF No. 27-3 at 2; copies of emails, showing that the contacts with whom Plaintiff interacted used email addresses with the extension "@republicservices.com," ECF No. 27-6 at 3;

---

[5] In its briefing, Plaintiff argues that Republic should be considered a party to the contract under a theory of "estoppel by admission." ECF No. 27-1 at 5. In Maryland, "estoppel by admission" prevents a party from asserting a factual position "inconsistent with that taken in prior litigation." *Standard Fire Ins. Co. v. Berrett*, 910 A.2d 1072, 1087 (Md. 2006); *see also Gordon v. Posner*, 790 A.2d 675, 689 (Md. App. 2002). Plaintiff does not argue that Republic made any inconsistent statement in prior litigation, and argues at times that it relied on Republic's statements and actions (which is not a requirement of estoppel by admission). As such, the Court construes Plaintiff's argument as being one of detrimental reliance or equitable estoppel, the elements of which are discussed herein.

8

and, a picture of the containers that were put on Plaintiff's property, which displays the name "Republic Services," and lists the website "republicservices.com," ECF No. 27-7.

In assessing whether a party is bound under a contract pursuant to detrimental reliance, Maryland courts apply a four-part test and consider whether there was: (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) which does induce actual and reasonable action or forbearance by the promise; and (4) causes a detriment that can only be avoided by the enforcement of the promise. *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 674 A. 2d 521, 532 (Md. 1996). *See also Gilbert v. Gilbert*, 186 A. 2d 590 (Md. 1962) (requiring that party asserting estoppel must have been prejudiced); *Wilson Bros. v. Cooey*, 247 A.2d 395 (Md. 1968) (noting that estoppel by admission or pleading is recognized in Maryland where "another will be prejudiced by his action.").

The record is clear that the Agreement specifically defined the contracting party as BFI; as such, Plaintiff cannot bring a claim against Republic absent a showing of detrimental reliance. Republic points out, and the Court agrees, that Plaintiff fails to "cite any testimony as to what if anything it did or would have done differently if it had realized its contract was with BFI." ECF No. 30 at 3. Thus, Plaintiff has not claimed that it detrimentally relied on any action or promise of Republic, and Republic's Motion for Summary Judgment is granted.[6]

### C. Plaintiff's Claim for Damages to its Walls

BFI seeks summary judgment regarding Plaintiff's claim that BFI negligently "gouged or otherwise damaged plaintiff's cinder block walls" in the corridors leading to the area where BFI picked up the containers. ECF No. 26-1 at 7 (quoting Plaintiff's Amended Complaint, ECF No.

---

[6] Having granted summary judgment for Republic entirely, the Court refers to BFI as the sole remaining defendant for the remainder of this Opinion.

12 ¶ 6). Specifically, Plaintiff's Amended Complaint alleges that BFI breached a duty to Plaintiff "by failing to properly operate and control their equipment and dumpsters and by negligently conducting trash pickups." ECF No. 12 ¶ 5. BFI argues that it is entitled to summary judgment on this claim because "BFI did not move the dumpsters through the corridors where Plaintiff claims the damage occurred. Rather, that was the responsibility of Plaintiff's cleaning contractor." ECF No. 26-1 at 7. In support of this argument, BFI quotes the deposition of Plaintiff's corporate designee, Charles Leintu, who testified that "primarily the task is done by the cleaning company . . . for the most part it is probably going to be the cleaning company." ECF No. 26-6 at 5.

Plaintiff, however, points to evidence in the record that it was BFI who moved the containers through Plaintiff's building. ECF No. 27-1 at 5. In fact, at other points of his deposition, Leintu testified that the responsibility for moving the containers was split between the cleaning company and BFI. *See* ECF No. 27-8 at 11–12. Furthermore, at one point Leintu testified that two of BFI's employees came to observe the damaged walls and admitted that the damage was caused by their containers. *Id.* at 4. In addition, in a supplemental affidavit Leintu stated that "[b]oth the defendant and the cleaning contractor were responsible for taking dumpsters from the trash collection rooms to outside and returning them." ECF No. 27-5 at 3. Plaintiff also argues that even if BFI did not move the containers, BFI is still responsible for the damage because "it was defendants' responsibility to supply dumpsters of a size and shape such that the transport of the dumpsters would not damage the walls of plaintiff's property." ECF No. 27-1 at 5–6. As evidence for its damages, Plaintiff attaches an estimate from a contractor who claims that it will cost $37,900 to install steel plate barriers along the cinder block walls to prevent further damages. ECF No. 26-11 at 2.

10

Here, there is a genuine dispute of material fact regarding: (1) who was responsible for moving the containers through Plaintiff's hallways; (2) whether the size and shape of the dumpsters were reasonable for Plaintiff's building; and, (3) the amount of damages that Plaintiff suffered. A reasonable jury could find that BFI was liable on the evidence presented. Even if BFI was only partially responsible for moving the containers through Plaintiff's hallways, a jury can still apportion liability as is appropriate. Thus, BFI is not entitled to summary judgment as a matter of law.

### D. Plaintiff's Claim for Trespass Damages

BFI also argues that it is entitled to summary judgment on Plaintiff's claim for trespass damages. Plaintiff's trespass claim alleges that Plaintiff suffered damages when BFI refused to remove its dumpsters once Plaintiff terminated the Agreement, because those dumpsters then took up space that would have been "used for other containers and for residential traffic." ECF No. 26-10 at 4–5. Specifically, Plaintiff alleges that based on the "prime location of the spaces, the additional work and inconvenience required to move the containers in and out so that other containers could be used and the impediment to foot traffic and the inconvenience to residents," Plaintiff suffered $75 per container per day between the time that Plaintiff asked BFI to remove the containers, July 13, 2015, and when they were actually removed, November 11, 2015, for a total of $95,287.25. *Id.* BFI argues that this $75 rate was arbitrarily chosen by Plaintiff, and was not "based on any actual loss or cost to Plaintiff" and therefore "cannot serve as a basis for Plaintiff recovering compensatory damages." ECF No. 26-1 at 10. BFI points out that Plaintiff has not produced any evidence of "actual damage," "cost of restoration" or the "fair rental value of the space on its property that each of [the] dumpsters occupied." *Id.* In support of its argument that the $75 rate is unreasonable, BFI points out that charging $750 per day ($75 per container

11

for 10 containers) is the equivalent to charging $22,500 per month of rent, whereas condominiums in the building rent for $1,250 per month. ECF No. 26-1; ECF No. 26-13.

Plaintiff argues that "every unauthorized entry upon the land of another is a trespass" and the owner "at least sustains a legal injury which entitles him to a verdict for some damages." ECF No. 27-1 at 7 (quoting *Stanton v. Lapp*, 77 A. 672 (Md. 1910)). Furthermore, Plaintiff argues that it does not need to produce an expert to opine on the fair rental value of the land occupied by Defendant, and that "the plaintiff as owner . . . of the trespassed land is permitted to opine as to value." *Id.* at 7.

In Maryland, it is well-established that "in a trespass case, unlike in most cases, [a plaintiff] need not prove the exact amount of injury in order to secure compensatory damages." *Brown v. Smith*, 920 A.2d 18, 32 (Md. App. 2007). This is because every trespass amounts in at least a legal injury entitling the property owner to damages, even if only "so small as to be merely nominal." *Id.* at 29; *see also Brooks v. Jenkins*, 104 A. 3d 899, 902 (Md. App. 2014) (reasoning that plaintiffs were entitled to nominal damages for trespass, even where no actual property damages were suffered). Furthermore, a plaintiff need not establish an exact value for the value of the land, which can be left to the fact-finder's discretion. *See id.* at 32 (citing *Lanier v. Burnette*, 538 S.E.2d 476, 480–81 (Ga. App. 2000) ("'no precise rule for ascertaining damage can be given'" in some trespass cases, such that the jury should be left to decide how much "'defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the [trespass]'") (citation omitted); *Kaufman v. Adrian's Tree Serv., Inc.*, 800 So. 2d 1102, 1105 (La. Ct. App. 2001) (when "[n]either party sought to establish a monetary value for the cut trees" taken by trespasser, decision regarding appropriate value was

12

within fact-finder's discretion; award of $500 per tree was appropriate in light of nature of trees and their aesthetic value to the property).

Here, BFI does not contend that it is not liable for trespass; rather, it argues that Plaintiff cannot prove the amount of damages that Plaintiff alleges it suffered. This fact, however, is not fatal to Plaintiff's claims under Maryland law at this stage. There is a disputed fact regarding whether BFI trespassed on Plaintiff's property by refusing to remove its containers, and there is also a disputed fact regarding the rental value of the space that BFI occupied. As such, BFI is not entitled to summary judgment on Plaintiff's claim for trespass damages.

### E. BFI's Counterclaim

Finally, BFI asks the Court to grant summary judgment on its counterclaim for contract damages arising from Plaintiff's failure to pay BFI for services beginning in January 2015. ECF No. 26-1 at 11. BFI argues that its contract with Plaintiff allowed BFI to raise its rates upon notice to Plaintiff, and that BFI provided Plaintiff with such notice in December 2014. *Id.* Plaintiff argues that BFI is not entitled to summary judgment because the contract and notice were not legible, and "there was no basis for the rate or fuel increases." ECF No. 27-1 at 9. Plaintiff also contends that "defendant repeatedly failed to supply the services as required by the contract agreement." *Id.* Finally, Plaintiff argues that it would be "unjust and inappropriate to enter summary judgment at this time because the plaintiff's claim has not been fully adjudicated." *Id.* In response, BFI attaches a more legible copy of the Agreement's terms, which indicates that BFI had the authority to raise Plaintiff's rates. ECF No. 26-3. Furthermore, BFI points to the fact that there were only a handful of instances in which they missed a trash pickup, and that they would "apologize and come the next day." ECF No. 27-8 at 111–112.

In Maryland, the "principle that a party to a contract is bound by his signature even if he neglects to read the contract is a point of contract law that precludes one party to a contract from denying that the terms of the contract are binding." *Meeks v. Dashiell*, 890 A.2d 779, 788, *aff'd*, 913 A.2d 10 (Md. App. 2006). However, where a contract term is illegible, there clearly cannot be a sufficient meeting of the minds on that point. *Artists & Framers, Inc. v. Lease Fin. Grp., LLC*, No. CIV.A. WMN-10-3330, 2011 WL 345883, at *4 (D. Md. Feb. 2, 2011) ("Plaintiffs cannot be held to a provision that they could not read").

Here, the Agreement contained a page of "Terms and Conditions." ECF No. 26-3 at 3. At the bottom of that page, Plaintiff's agent initialed on behalf of Plaintiff on September 7, 2012. *Id.* Although the scanned version provided by Plaintiff—which would have been nearly five years old when filed—is not entirely clear, the heading "Rate Adjustments" can be easily made out in bold font. *Id.* The clearer but unsigned version provided by BFI provides that BFI could "increase the rates provided in this Agreement to adjust for any increase in" a number of different costs. *Id.* at 6. The Agreement also provides that BFI may charge a "fuel/environmental recovery fee . . . which amount [BFI] may increase or decrease from time to time," and that if Plaintiff did not pay its invoices, BFI would charge a late fee of 1.5% of the amount that is past due. *Id.* Finally, the Agreement provides that Plaintiff could terminate the Agreement only by written notice at least 60 days before the end of the Agreement's term. ECF at 2. In further support of its counterclaim, BFI provides its invoices to Plaintiff. ECF No. 26-5. Of particular note, under a heading labeled "Important Information" in the December 20, 2014 invoice, BFI legibly advised Plaintiff that "[y]our next invoice may reflect a rate adjustment, if you have any questions after receiving your next invoice please contact us." *Id.* at 18.

14

Here, Plaintiff is clearly liable to some degree to BFI. Even if BFI was not contractually permitted to raise Plaintiff's rates, this did not give Plaintiff the ability to continue accepting service for many months without paying BFI. At the very least, Plaintiff is liable to BFI for the payments for service under the terms of the original contract. Thus, the Court grants summary judgment on BFI's counterclaim as to liability. The exact amount that Plaintiff owes BFI is disputed, however. If, when signed, the Terms and Conditions section legibly provided that BFI could raise Plaintiff's rates—a factual dispute—then Plaintiff may be liable for the entire amount that BFI claims. If, however, the content of the "Rate Adjustments" section was illegible when the Agreement was signed, then Plaintiff may be liable only for the amount contained in the original Agreement. *See JHF Vista USA, Ltd. v. John S. Connor, Inc.*, No. CIV. CCB-09-30, 2010 WL 481327, at *4 (D. Md. Feb. 5, 2010) (where terms in a contract were blurry, contracting party was not put on notice of their existence, and terms were not part of contract). Therefore, the Court denies BFI's Motion as to the damages of its counterclaim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 26, is granted-in-part and denied-in-part. A separate Order shall issue.

Date: February 20, 2018

GEORGE J. HAZEL
United States District Judge